## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**VINCENT MARK CASTILLO**                              **CIVIL ACTION**

**VERSUS**                                             **NO.    15-2376**

**SANDY MCCAIN, WARDEN**                               **SECTION:    "A"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED**.

*Procedural Background*

Petitioner, Vincent Castillo, is currently incarcerated at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.    He is serving an enhanced sentence of 20 years imprisonment imposed in March 2013 following his conviction by a jury of simple burglary (24th J.D.C. No. 12-270).    His federal application purportedly challenges this conviction as well as one used to enhance his current sentence (24th J.D.C. No. 96-4842 – 1996 conviction for two counts of attempted extortion) and an unrelated 2012 misdemeanor conviction

(24th J.D.C. No. 10-1601) for two counts of simple battery.

In Case No. 12-270, Petitioner was convicted of one count of simple burglary on January 24, 2013.    On March 1, 2013, he was sentenced to a term of 10 years imprisonment. On March 25, 2013, following a multiple-offender adjudication as a second-felony offender based upon his previous felony conviction in Case No. 96-4842, the original sentence was vacated and he was sentenced to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence.    On March 26, 2013, the State filed a motion to reconsider the sentence seeking restitution.    The motion was granted and following a hearing, the trial court ordered payment of $5,000 in restitution.

On October 29, 2014, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.[1]    Castillo's request for a rehearing was denied on November 25, 2014.    The Louisiana Supreme Court denied his related writ application on September 18, 2015.[2]    His multiple collateral challenges attacking that conviction and sentence in the state courts have been unsuccessful.

Case No. 96-4842 has been the subject of numerous prior challenges by Castillo in the Eastern District of Louisiana, and its procedural history is recounted briefly herein as previously set forth in those federal *habeas* proceedings.    *See Castillo v. Stalder,* 04-CV-0534 "A"(5) (E.D. La.) (dismissed without prejudice for failure to exhaust available state-

---

[1]  *State v. Castillo*, 13-KA-552 (La. App. 5th Cir. 10/29/14), 167 So.3d 624.

[2]  *State v. Castillo*, 14-KO-2567 (La. 9/18/15), 178 So.3d 145.

court remedies with respect to his 2003 revocation and noting lack of subject matter jurisdiction with regard to original conviction and that he was not in custody on 2001 revocation); *Castillo v. La. Dept. of Corr.*, 03-CV-2590 "A"(5) (E.D. La.) (same); *Castillo v. State of Louisiana*, 02-CV-692 "A"(5) (E.D. La.) (dismissed as untimely and procedurally defaulted).[3]   On June 28, 2000, Castillo was convicted of two counts of attempted extortion. He was sentenced on July 5, 2000 to consecutive jail terms of (1) three years and 10 months and (2) three years.   The sentence was suspended and he was placed on active probation for three years.   On March 14, 2001, Castillo was arrested and charged with violating the conditions of his probation.   His probation was formally revoked on April 9, 2001 and his sentence was made executory.   After he was returned to jail for service of the sentence, Castillo apparently waived his right to earn incentive wages while in prison and to instead accumulate increased "good time" credits and an early release from jail.   He was subsequently released from jail subject to various conditions of supervision.   On June 5, 2003, he was rearrested.   His parole was formally revoked on July 10, 2003.

In Case No. 10-1601, Castillo was convicted of two misdemeanor counts of simple battery after a bench trial held on June 4, 2011.   He was sentenced to serve a term of six months imprisonment on each count in parish prison, to run concurrently.   The Louisiana

---

[3]   *See also Castillo v. Blanco*, 04-CV-2918 "A"(5) (E.D. La.); *Castillo v. Cassara*, 05-CV-5006 "A"(5) (E.D. La.) (transferring application to the United States Fifth Circuit, which denied authorization to proceed with a second or successive petition challenging the extortion conviction and sentence).

Fifth Circuit Court of Appeal denied his related supervisory writ application challenging the misdemeanor conviction on December 7, 2012.[4]

On June 16, 2015, Castillo filed the instant federal application.[5]    In that application, he asserts that a legal judge did not preside over any of his state district-court proceedings and that he was denied copies of records of his legal proceedings and transcripts.    He references his final two grounds for relief only by citations to previous *habeas* proceedings that were filed, but not thereafter pursued in the federal district courts.    The State has filed a response to the petition.[6]    For the following reasons, the undersigned recommends that the application be dismissed.[7]

---

[4]  State Rec., Vol. 25 of 26, *State v. Castillo*, 12-KH-618 (La. App. 5th Cir. 12/7/12) (unpublished writ decision).

[5]  Rec. Doc. 1, 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."    *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).    His application bears a certification that his application was placed in the prison mailing system on June 16, 2015.

[6]  Rec. Doc. 18.    As noted in the State's response, the state-court record consists of 26 volumes representing the three state-court convictions from the 24th J.D.C. identified in his federal application:    Case No. 96-4842 (Volumes 20-22); Case No. 10-1601 (Volumes 23-25); Case No. 12-270 (Volumes 1-19).    Volume 26 contains the prior *habeas* petitions identified in his federal application as purported claims for relief associated with Case No. 12-270.

[7]  The Court declines in this particular case to require Castillo, as urged by the State via procedural objection, to file three separate federal applications as to each of the convictions imposed in different sections or divisions of the 24th Judicial District Court of Jefferson Parish.    Rule 2(e), Rules Governing § 2254 Cases (a "petitioner who seeks relief *from judgments of more than one state court* must file a separate petition covering the judgment or judgments of *each court*"); *see, e.g., Dantzler v. Cain*, 15-6309, 2016 WL 1739827

**Case No. 96-4842**

As previously noted, Castillo sought federal *habeas corpus* relief with respect to his original extortion conviction in Case No. 96-4842, and that application was dismissed with prejudice as untimely and procedurally defaulted.[8]    Castillo, therefore, may not pursue another direct substantive challenge to the criminal judgment of conviction without first obtaining authorization from the United States Fifth Circuit Court of Appeals to file a second or successive application.    *See* 28 U.S.C. § 2244(b).    Because he has not complied with that requirement, this Court lacks jurisdiction to entertain the instant challenge to that criminal judgment.    *Dantzler*, 2016 WL 1739827, at *3; *Holts v. Cain*, Civ. Action No. 15-4584, 2016 WL 346898, at *2-3 (E.D. La. Jan. 8, 2016), *adopted*, 2016 WL 301815 (E.D. La. Jan. 25, 2016).

To the extent Castillo may be challenging the revocation of probation, he was no longer in custody under that sentence at the time he filed his federal application, and consequently this Court lacks jurisdiction to entertain such a challenge.[9]    A federal court is

---

(E.D. La. March 30, 2016), *adopted*, 2016 WL 1704478 (E.D. La. Apr. 28, 2016).    The Court is aware that the rule has been broadly applied in other federal district courts to preclude such challenges to separate state judgments even in the same court.    *See, e.g., Thrasher v. Missouri*, No. 4:12-CV-01828-NAB, 2012 WL 4936583, at *1 (E.D. Mo. Oct. 17, 2012) (petitioner may not challenge both his 1982 and 1992 convictions in the same *habeas* petition); *Gray v. Swarthout*, No. CIV S-10-2463 JAM EFB P, 2011 WL 3875896, at *2 (D. Cal. Sept. 1, 2011) (rejecting challenges in a single petition to separate judgments from the same county court).

[8]  *Castillo v. State of Louisiana*, 02-CV-692 "A"(5) (E.D. La.).

[9]  The state courts recognized that Castillo was no longer in custody as grounds for denying his motion to vacate the attempted extortion sentence.    *See* State Rec., Vol. 21 of 26, State District Court Order denying Motion to Vacate (June 25, 2014); *State v. Castillo*, 14-

without subject matter jurisdiction to consider the legality of an expired conviction and discharged sentence.    28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a) (federal district courts have jurisdiction to entertain petitions for writs of *habeas corpus* from persons who are "in custody in violation of the Constitution or laws or treaties of the United States."); *Maleng v. Cook*, 490 U.S. 488, 492 (1989).

Furthermore, though not expressly argued by Castillo, even if his claim is liberally construed as a challenge to his expired attempted extortion conviction because it was used to enhance his current sentence for simple burglary, he fares no better.    In L*ackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394 (2001), the Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. *See Daniels*, *post*, at 382. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence though a petition under § 2254 [or § 2255, per *Daniels*,] on the ground that the prior conviction was unconstitutionally obtained.

*Lackawanna*, 532 U.S. at 403-404 (citation omitted).[10]    The attempted extortion conviction

---

KH-568 (La. App. 5th Cir. Sept. 14, 2014) (unpublished writ ruling).    Similarly this Court in *Castillo v. La. Dept. of Corr.*, Civ. Action No. 03-2590 "A"(5) and *Castillo v. Stalder*, Civ. Action No. 04-0534 "A"(5), dismissed his application without prejudice on grounds that the Court was without jurisdiction to entertain his challenge to the 2001 revocation and unable to consider the 2003 revocation because he had not exhausted his state court remedies.

[10]    As in *Daniels*, the Court in *Lackawanna* noted an exception applicable only if the prior conviction was "obtained where there was a failure to appoint counsel in violation of the Sixth Amendment as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Lackawanna*, 532 U.S. at 404.    Here, Castillo neither alleges nor does the record show a failure to appoint counsel.    State Rec., Vol. 20 (reflecting the initial appointment and

is "conclusively valid" and no longer open to direct or collateral attack in its own right because Castillo has challenged the conviction in state court (albeit unsuccessfully). Castillo may not attack the enhanced sentence he is currently serving on grounds that his expired conviction was unconstitutionally obtained.    For these reasons, neither his original attempted extortion conviction nor his subsequent revocation is subject to direct or collateral challenge in these federal *habeas* proceedings.

### Case No. 10-1601

Similarly, Castillo is no longer in custody on the 2012 misdemeanor simple-battery convictions.    His maximum six-month sentence imposed on those charges has been discharged.    Indeed, the state courts observed that he was no longer in custody when he applied for relief in 2014.[11]    Furthermore, there can be no collateral consequences alleged from the *misdemeanor* simple-battery conviction, which cannot be used to enhance a subsequent sentence.    Thus, Castillo's 2012 misdemeanor simple-battery conviction is no

---

representation by defense counsel, Michael Somoza, and Castillo's request to dismiss counsel and represent himself.    *Id.,* Minute Entry, 2/2/00).    A second contemplated exception, where through no fault of petitioner, there was no channel of review actually available by which he might have timely challenged his prior conviction, is also inapplicable. *Lackawanna*, 532 U.S. at 405–406.

[11]    *See State ex rel. Castillo v. State*, 15-KH-1075 (La. 5/13/16), 190 So.3d 1181.    The Louisiana Supreme Court denied Castillo's writ application, finding no error in the court of appeal's written reasons denying post-conviction relief, and incorporated those written reasons in the writ ruling.    The denial by the Louisiana Fifth Circuit was based on its finding that Castillo was no longer in custody in Case No. 10-1601, having "long since satisfied his sentence[]."

longer open to direct or collateral attack.    This Court lacks jurisdiction to entertain any challenge to that conviction.

### Case No. 12-270

In his federal application, Castillo sets forth four grounds for relief, accompanied by minimal, if any, factual grounds in support of those claims.    His claims include the following:

Ground one:        No judge presided over any of my district court cases.

Ground two:        Louisiana and my custodians refuse to copy my legal pleadings or provide me with the criminal transcripts or records.

Ground three:      See grounds in *Castillo v. Tanner*, #14-715 USDC-M.D.LA.

Ground four:        See grounds in *Castillo v. Tanner*, #14-2916, USDC E.D.LA.

The State submits the claims are timely, but partially unexhausted and meritless.

Initially, the Court observes that the mere reference to old federal petitions filed in the Middle and Eastern Districts of Louisiana falls woefully short of compliance with Rule 2(c) of the Rules Governing Section 2254 Cases.[12]    Pursuant to Rule 2(c), a petition under Section 2254 must, among other things:    (1) specify all the grounds of relief available to the petitioner and (2) state the facts supporting each ground.    By its plain terms, the rule

---

[12]   Even if this Court were to take judicial notice of those prior federal *habeas* proceedings, which were dismissed for lack of subject matter jurisdiction and closed for administrative purposes for *non-compliance with the Rules Governing Section 2254 cases* pending receipt of a formal AO Form 241, respectively, the claims raised in those federal petitions cannot be considered properly raised in this federal *habeas* case.

requires at a minimum that the petition state the grounds for relief and the underlying facts supporting those grounds. *Baham v. Allen Correctional Center*, No. 07-CV-4075, 2009 WL 3148757, at *4 (E.D. La. Sept. 30, 2009). Mere reference in a federal petition to various state-court records, *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990), or incorporating by reference grounds raised in attached exhibits is insufficient. *Phillips v. Dormire*, No. 04-CV-1483, 2006 WL 744387, at *1-2 (E.D. Mo. Mar. 20, 2006). It is neither required nor appropriate for a court to scour a state-court record to divine the issues that a petitioner is attempting to raise in his petition. *See Baham*, 2009 WL 3148757 at *4. Similarly, the Court need not in this case review old federal petitions – one of which was rejected for deficient pleading – in order to discern claims for inclusion here. For this reason, the Court considers only the first two claims set forth above as properly raised and presented for federal *habeas* review in these proceedings.[13]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts

---

[13] These latter two claims, not having been properly raised in these proceedings, cannot result in a mixed petition as the State argues, and therefore the Court will not consider the State's alternative contention for dismissal without prejudice on that basis.

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the

particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### Facts

The following facts were summarized on direct appeal by the Louisiana Fifth Circuit Court of Appeal:

> At trial, Lea Fink testified that she met defendant in 2007 when she began working for him as a process server. In 2008, the couple, who were never married, had a son; their relationship, however, was tumultuous.

In 2009, Fink purchased a house at 509 Airline Park Boulevard in Jefferson Parish.[14]  Fink stated that she was still staying most nights at her mother's house so, in July, August, and September of 2009, defendant, who was doing renovation work at the property, slept at 509 Airline Park without her permission. After a particular incident of simple battery[15]  on September 10, 2009, Fink obtained a protective order against defendant. On that protective order dated September 11, 2009, Fink's address was listed as 509 Airline Park, and defendant's address was listed as "temporary, unknown." That order expired on December 11, 2009.

After September of 2009, Fink only saw defendant on special occasions to allow him to visit their son, and, during those infrequent events, someone from her family was present. Fink testified that she did not give defendant permission to be at her house at any time in 2010 or 2011.

On October 26, 2011, Fink obtained a "permanent"[16]  protective order against defendant. In that order, the trial judge ordered defendant not to follow, stalk, harass, or threaten Fink.

---

[14]  It is undisputed that defendant did not contribute funds toward the purchase of the house.

[15]  On March 26, 2010, the Jefferson Parish District Attorney, in case number 10–1601, charged defendant with two counts of simple battery, in violation of La. R.S. 14:35. Regarding the first count of simple battery, defendant testified that, while on the premises of 509 Airline Park, he "pushed [Lea Fink]" in an "aggressive ... continuous, steady push" on July 11, 2009. Further, Lea Fink testified that, on July 11, 2009, defendant hit her "in the ... head over and over and over." Regarding the second count of simple battery, Kayla Fink testified that she saw Vincent Castillo slap her mother, Lea Fink, in the face while they were arguing on September 10, 2009. On June 4, 2012, after a bench trial, the trial judge found defendant guilty as charged of two counts of simple battery and sentenced relator to six months in parish prison on each count, to run concurrently, with credit for time served. This Court affirmed defendant's misdemeanor convictions for simple battery. *State v. Castillo*, 12–618 (La. App. 5 Cir. 12/7/12) (unpublished writ disposition).

[16]  Pursuant to La. R.S. 46:2136(F)(2)(a), "any protective order granted by the court, which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in R.S. 46:2135(A)(1) may ... be [deemed] effective for an indefinite period of time ... on ... motion of the petitioner."

However, on November 17, 2011, Fink, who was staying at her mother's house with her children, learned that defendant was at 509 Airline Park so she contacted the police. When she tried to unlock her front door, her key did not fit the lock. Fink testified that she did not give permission for anyone to change the lock. Soon thereafter, defendant arrived at 509 Airline Park and presented a protective order that he had fraudulently obtained, listing his address as 509 Airline Park.[17]  The deputies informed Fink that, if she did not leave the property, she would be arrested for violating a protective order.

On or about December 2, 2011, Fink saw yard signs advertising a garage sale scheduled to take place at 509 Airline Park Boulevard on December 3 and 4, 2011. Around that same time, Fink also observed advertisements of her property for sale on "Craigslist," including her son's bed, a sand box, a wagon, and a mattress for her children. Fink testified that she did not authorize defendant to sell her property on Craigslist or to hold a garage sale at her house.

On Monday, December 5, 2011, Fink appeared at the hearing on the protective order that defendant fraudulently obtained against her. At that hearing, defendant's protective order was dismissed. Immediately thereafter, Fink went to her house and waited for deputies to arrive to escort her into the house. While she was waiting, defendant arrived at the house, unlocked the door, and went inside. The deputies who arrived thereafter misinformed her regarding defendant's right to remain at the house so she left her without confronting defendant.

On December 9, 2011, Fink finally went to the Fourth District Patrol Division and gave her statement to Sergeant Al West of the Jefferson Parish Sheriff's Office ("JPSO"). Later that day, Sergeant West accompanied Fink to 509 Airline Park. Fink tried to open her front door with her key to no avail. Eventually, she found an open window in the kitchen and they gained entry into the house.

---

[17]  Tonia Williams, an Assistant Jefferson Parish District Attorney in the Family Violence Unit, explained that a stay away order and a protective order are the same thing. Williams testified that to obtain a protective order, a complainant fills out a standard petition, which would be notarized. She further testified that when a petition is filed, no evidence is required, and that person would not have to show proof of ownership of a residence or vehicle or other assets. Further, although the trial judge did grant the initial protective order, the trial judge dismissed the petition at the December 5, 2011 hearing, thereby dissolving the protective order.

After entering the house, Sergeant West found items that belonged to defendant, including a Jefferson Parish Correctional Center Handbook and business cards. Sergeant West also found the purchase agreement for 509 Airline Park, which listed Fink as the sole owner of the property.

Sergeant West testified that Fink told him that some of her personal property was missing from her house. Fink stated that, without her permission, defendant had advertised her and her children's belongings for sale on Craigslist and held a garage sale on December 3 and 4, 2011.

Sergeant West subsequently arrested defendant for unauthorized entry of 509 Airline Park. Sergeant West advised defendant of his rights, which defendant indicated he understood.

Debra Broussard, who was Fink's neighbor, testified that she went to the garage sale at Fink's home in 2011. Broussard testified that, during the garage sale, Fink's house was a "mess" and that "the whole house" was for sale. At the garage sale, Broussard saw defendant selling things and receiving money.

After the State rested, the defense called Steven Lauridsen, who testified that he had known defendant for more than three years and had worked for defendant. Lauridsen testified that he and defendant were no longer friends because defendant accused him of stealing.

Lauridsen further testified that, in 2009, he lived and did remodeling work at 509 Airline Park Boulevard for approximately three months. When he lived there, no one other than defendant lived at 509 Airline Park. Lauridsen testified that, during the time that he lived there, Fink slept at 509 Airline Park Boulevard occasionally and defendant stayed there four or five nights a week. Lauridsen believed that in 2009 defendant was dating Fink.

Lauridsen recalled that defendant had storage units and that, in 2009, he assisted defendant in bringing approximately six truckloads of his property from those storage units to the house at 509 Airline Park. Lauridsen testified that some of the items that Fink claimed were her property were similar to items that he helped defendant bring out of storage, but he could not swear that they were the same items. Lauridsen did not recall bringing anything very large from the storage unit.

The defense also called Beverly Cottingham, who testified that she had known defendant for about seven years. Cottingham believed that the last time she saw defendant was when she helped him move items from his storage unit. When questioned, she was unsure of the date but believed that they brought the items to 509 Airline Park. Cottingham testified that she did not help load or unload the items brought from defendant's storage units but remembered that it took defendant approximately fifteen minutes to load the truck and fifteen minutes to unload it.

After hearing the testimony and evidence, the six-person jury unanimously found defendant guilty as charged. On appeal, defendant, both pro se and through counsel, challenges his conviction, multiple offender adjudication, and enhanced sentence, including the restitution.[18]

### Claims for Relief

1. *No Legal Judge Presided over his Criminal Proceedings*

Castillo's complaint appears to stem from the mere fact that an *ad hoc* judge presided over his criminal proceedings.    The record reflects that the Commissioner and the 24th Judicial District Court of Jefferson Parish voluntarily recused themselves from his case.[19] By Order of the Louisiana Supreme Court, a retired judge *ad hoc* was appointed to handle all further proceedings.[20]    Castillo challenged his judicial authority post-conviction by filing a

---

[18]  State Rec., Vol. 17 of 26, *State v. Castillo*, 13-KA-552 (La. App. 5th Cir. 10/29/14), 167 So.3d 624 (footnotes in original).

[19]  *See* State Rec., Vol. 1 of 26, Docket Master Entry, 1/24/12 (Commissioner Joyce has been recused from all case pertaining to Castillo); *see also* Order of Recusation issued by the 24th Judicial District Court signed by Sections A-P on or about March 8, 2012.    The Order states that the judges, commissioner, and employees of the 24th J.D.C. have been named as defendants in various lawsuits filed by Castillo and that recusal was necessary to avoid the appearance of any impropriety.

[20]  State Rec., Vol. 1 of 26, Louisiana Supreme Court Order assigning retired Judge Donald M. Fendlason as judge *ad hoc* of the 24th Judicial District Court, Parish of Jefferson,

motion to recuse, which was denied.    He requested supervisory review of that ruling from the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court. [21]    The appellate court denied relief, finding that the untimely motion to recuse the trial judge was not filed prior to commencement of trial or before the verdict was rendered.    The Louisiana Supreme Court thereafter denied relief without stated reasons.    The State concedes that he has exhausted this claim in the state courts.    The State asserts that recusal and *ad hoc* appointment is entirely a matter of state law and therefore not a proper subject of federal *habeas* review.

A federal court may review a state prisoner's *habeas* petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).    To the extent Castillo challenges the state supreme court's ability to appoint a retired judge *ad hoc* or that *ad hoc* judge's authority or qualification under state law, that claim is not subject to federal *habeas* review.[22]    "A federal court may not issue a writ of

---

for the purpose of hearing and disposing of the matter entitled "State v. Vincent M. Castillo" No. 12-270 on the docket of said court, signed May 3, 2012.

[21]  State Rec., Vol. 17 of 26, *State ex rel. Castillo v. State*, 2014-KH-1677 (La. May 22, 2015), 170 So.3d 978 (related writ application to the Louisiana Fifth Circuit, 14-KH-418, and Motion to Recuse denied May 16, 2014, attached).

[22]  Castillo's federal petition contains no factual support for this claim.    However, the Court notes that his state-court pleadings associated with Louisiana Supreme Court Writ No. 2014-KH-1677 reference only state law (erroneously citing to rules of *civil* procedure governing recusal rather than La. Code Crim. P. art. 671 *et seq*., and La. Const. Article V, § 5(A)).    Although he complained about the denial of a *post-conviction* motion to recuse the

*habeas corpus* on the basis of a perceived error of state law."    *Pulley v. Harris*, 465 U.S. 37, 41 (1984).    A federal court does "not sit as [a] 'super' state supreme court in a *habeas corpus* proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); *see Swarthout v. Cooke*, 536 U.S. 216, 861 (2011) (federal *habeas* relief does not lie for errors of state law).

Castillo is entitled to *habeas* relief only if he can show that denial of the motion resulted in a federal due-process violation.    However, his vague assertion that no judge presided over any of his cases does not suffice to state a cognizable federal due-process claim for purposes of *habeas* review.    In an abundance of caution, the Court notes that to the extent his grounds arguably may implicate federal due-process concerns, the claim is plainly meritless.[23]

The United States Fifth Circuit Court of Appeals has summarized the controlling law as follows:

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. *See, e.g., Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). However, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Id.* at 904, 117 S.Ct. 1793. A judge will, however,

---

*ad hoc* trial judge, the denial of that belated motion for recusal, as noted by the Louisiana Fifth Circuit on review, was proper under state law.

[23]  Because the state courts did not determine the merits of a due process claim, the AEDPA's deferential standard of review does not apply.    A *de novo* standard of review applies instead.    *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (citations omitted).

violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. *Id.* at 905, 117 S.Ct. 1793. A likelihood or appearance of bias can disqualify a judge as well. *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (citations omitted).

Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.' " *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)); *see also Ryan v. Clarke*, 387 F.3d 785, 793-94 (8th Cir.2004) ("Application of this vague standard, when viewed through the deferential lens of *Williams v. Taylor* and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]"). Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. *See, e.g., Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir.2005) (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of *actual* bias on the part of the trial judge") (emphasis added).

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

(1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Bigby*, 402 F.3d at 559 (citing Supreme Court cases).

\*    \*    \*

In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Judges do not have to be naive; the evidence at trial may reveal the defendant to be a "thoroughly reprehensible person." *Id.* at 550-51, 114 S.Ct. 1147. However, judicial opinions will support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. *Id.* at 555, 114 S.Ct. 1147; *see also Berger v. United States*, 255 U.S. 22, 28, 41 S.Ct. 230, 65 L.Ed. 481 (1921).

*Buntion v. Quarterman*, 524 F.3d 664, 672-73 (5th Cir. 2008) (footnote omitted).

Castillo points to no objective record evidence to show that he received an unfair trial due to any impartiality or bias on the part of Judge Fendlason.    *See Richardson v. Quarterman*, 537 F.3d 466, 474 n. 4 (5th Cir. 2008).    His overriding concern based entirely upon an unsupported allegation that retired Judge Fendlason was not an "elected, sitting judge" certainly does not establish a due-process violation.    He is not entitled to *habeas* relief on this claim.

2.  *Denial of Transcripts or Records*

On page eight of his federal application, Castillo discusses his attempts to exhaust his first ground for relief in prior criminal writs, which he stated he could not produce because "Louisiana and my custodians refuse to copy my legal pleadings or provide me with the criminal transcripts or records."[24]    Though less than clear whether Castillo ever intended

---

[24]  To the extent he challenges the actions of prison officials in denying him copies and preventing access to the courts (*i.e.*, conditions of confinement) or requests that the Court declare the PLRA unconstitutional, those claims and the relief requested are not cognizable or available in a *habeas corpus* proceeding.

this argument as a separate claim for relief, because the State refers to it as a separate *habeas* claim, the Court will address it as an independent claim out of an abundance of caution.    No supporting factual grounds accompany this claim for relief.    The State concedes that Castillo appears to have exhausted his state court remedies as to this claim.

Although an indigent criminal defendant pursuing a first appeal of right is entitled to a free copy of the transcript of trial-court proceedings to assure an adequate and effective appeal, *Evitts v. Lucey*, 469 U.S. 387, 393-94, 105 S.Ct. 830, 834-35 (1985), a prisoner is not thereafter entitled to a free copy of his state trial transcript and record to search for possible error upon which to base a petition for collateral relief in the future merely because he is indigent.    *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975) (citations omitted).    In this case, the record plainly refutes that Castillo was refused a free copy of the record in violation of his constitutional rights to appellate review.    When he raised the record issue during his direct appeal, the Louisiana Fifth Circuit observed that it was moot:

> We further note that defendant's seventh and twenty-second pro se assignments of error are moot. In them, defendant asks for a copy of the appellate "record and transcripts;" that he be allowed fifteen to thirty days to resubmit an appellate brief; and requests the appointment of counsel to brief his arguments. These assignments of error are moot. First, defendant was appointed appellate counsel, who filed a thorough, well-executed brief that raised 5 assignments of error. Further, *on two separate occasions, this Court provided defendant, at no charge to him, a complete copy of the voluminous, appellate record in this case.* Finally, defendant has filed 4 pro se supplemental briefs in this case. Again, these assignments are moot.[25]

---

[25]    *State v. Castillo*, 167 So.3d at 638 n. 8 (emphasis added).

The Louisiana Supreme Court subsequently denied relief without stated reasons.[26]

It is clear that Castillo had access to his trial record through his appellate counsel who raised five issues on his behalf.    Castillo was also provided with his own additional copy of the record on direct appeal and was able to brief and present many additional issues for review.    Castillo has not shown that the state court's determination was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based upon an unreasonable determination of the facts in light of the evidence presented.

To the extent his claim implies that he was denied the right to any free copies of the records to allow him an adequate opportunity to fairly present his constitutional claims on post-conviction relief, that claim does not entitle him to federal *habeas* relief.[27]    There is no general due-process right of access to state-court records on collateral review in criminal

---

[26] *State v. Castillo*, 2014-KO-2567 (La. 9/18/15), 178 So.3d 145 (see assignment of error number 7).    Castillo also challenged the alleged denial of access to his record by supervisory writ application filed with the Louisiana Supreme Court on or about February 13, 2014, during the pendency of his appeal in the intermediate court.    State Rec., Vol. 17 of 26, *State ex rel. Castillo v. State*, 2014-KH-0587 (La. Nov. 7, 2014) (unpublished writ decision).

[27] Given the absence of factual support, the Court cannot discern the exact scope of this particular claim for relief.    Due to the sheer volume of writs filed by Castillo and the difficulty in discerning the nature of those applications for purposes of exhaustion (see Docket Master, State Rec., Vol. 1 of 26), the Court notes simply that he is not entitled to relief on this claim under either standard of review, *de novo* or deferential.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597-98 (5th Cir. 2003); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

proceedings. *See*, *e.g.*, *United States v. MacCollom*, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); *Deem v. Devasto*, 140 F. App'x 574, 575 (5th Cir. 2005); *Cook v. Cain*, 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015). An indigent criminal defendant simply does not have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings. *See Yates v. Collins,* 988 F.2d 1210 (5th Cir. 1993) ("[A]n indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim"); *Smith v. Beto,* 472 F.2d 164, 165 (5th Cir. 1973)(affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial").

The record in this case shows that Castillo was provided a copy of the record on direct appeal. Furthermore, Castillo does not identify the transcripts or records he was allegedly denied, or explain how the absence of those transcripts prevented him from presenting his claims to the state courts. Given the voluminous filings he accomplished in the state courts, the record tends to contradict any assertion that he was precluded access to the state courts

to raise claims on collateral review.    *Habeas* relief is not warranted on this claim.

## RECOMMENDATION

**IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Vincent Castillo challenging his state criminal judgment in Case No. 12-270 be **DISMISSED WITH PREJUDICE.**    To the extent that petitioner is challenging his state criminal judgment in Case Nos. 96-4842 and 10-1601, it is recommended that challenge be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[28]

New Orleans, Louisiana, this ___9th___ day of _____February_____, 2017

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.